## BARNER *v.* RULE.

[77 South. 521, Division B.]

1. EXECUTORS AND ADMINISTRATORS. *Disputed claims. Review. Questions of fact.*

    Where on the trial of a contest by the administrator of a claim against the estate of his decedent, the books of the claimant were introduced and their correctness duly attested by the book-

keeper, who in addition testified positively as to paying out all the items of cash charged on the account against the decedent either to the decedent himself or at his request, to his employees, in such case the credibility and weight of this testimony was a matter for the determination of the auditor and the chancellor, who gave full hearing to the auditor's report.

2. EVIDENCE. *Book of account. Cash items.*
   Where there was a custom between a merchant doing a large business and employing clerks and a bookkeeper and keeping the usual elaborate set of books and B. who had a number of hands or employees working for him, whereby the merchant advanced supplies and items of cash from time to time to B and his employees and charged the cash items to B's account in the same way that the goods were charged, and his bookkeeper would make out a statement of the account monthly and submit it to B. for his information and approval, and the integrity of the books and correctness of the itemized account was vouched for by the bookkeeper and his assistant, and there was nothing to indicate any irregularity in the method of keeping the books or any suspicion of improper dealing appearing on their face. In such case the books were admissible on the trial of a claim against the estate of B. to prove the items of cash charged on the account as well as the items of goods, especially where the bookkeeper had personal knowledge of many of the items and was quite positive about the correctness of all the cash items.

APPEAL from the chancery court of Sunflower county. HON. E. N. THOMAS, Chancellor.

Proceeding by J. W. Rule against W. G. Barner, Administrator. From a decree allowing the claim, the administrator appeals.

The facts are fully stated in the opinion of the court.

*Whitfield & Whitfield* and *Franklin & Burrow,* for appellant.

*J. H. Price.* for appellee.

STEVENS, J., delivered the opinion of the court.

In the course of the administration of the estate of J. D. Bartlett, deceased, appellee, J. W. Rule, presented

an itemized account against the estate which was by the clerk probated, allowed for the sum of one thousand, four hundred thirteen dollars, and three cents and duly registered. The administrator contested the probated claim of Mr. Rule and upon the application of the administrator the account and the issue presented on the several objections of the administrator against the allowance of the account was referred to an auditor. The claim as probated consisted of a promissory note for one hundred eighty-eight dollars and nine cents and items for goods, wares, and merchandise sold and delivered and cash advanced to and for the account of the deceased. The auditor made report disallowing the note which was barred by the statute of limitations, but allowed the itemized account. The administrator filed elaborate objections to the report of the auditor, and the report together with the testimony taken down by the auditor and all objections to the report were submitted to the chancellor, who confirmed the auditor's report and allowed the claim of appellee. From the decree of the chancellor allowing the claim the administrator prosecutes this appeal, and renews or presents afresh to this court the objections urged before the auditor and before the chancellor.

Liability for any portion of the account was denied, and appellee put to the proof. Many objections to the account are urged. At to most of these objections it is sufficient to state that in our judgment, they are without merit. The account was substantially itemized, and the objection on that ground may be disposed of under the ruling of the recent case of *Duffy & Kilroe,* 76 So. 681. The only point which we think it worth while to discuss is the contention that the book accounts of Mr. Rule were not competent evidence to prove the various items of cash charged on the account against the deceased. The determination of this question depends to some extent upon the relationship of the par-

ties and their course of dealing, one with the other. Mr. Rule was a merchant doing a large business, employing clerks and a bookkeeper, and keeping the usual elaborate set of books. The record shows that Mr. Bartlett had employees or "hands working for him," and that appellee regularly advanced to Bartlett and his employees supplies and money. In proving the items of the account the books were introduced. The correctness of the books was duly attested by Mr. Burke, the bookkeeper. More than this, this witness gave positive testimony that he himself paid out all items of cash charged on the account and either himself made the entries of all cash charged or had these entries made under his direction. He was asked, "Who gave Mr. Bartlett the money?" and in response stated:

"I gave it to him myself. I gave Mr. Bartlett the cash, and then would turn to his account and charge him with the cash on Mr. Rule's ledger, and charge him with the cash, and at the same time put it on the cashbook. . . . Every night I would foot up the debits and credits of my cashbook to see how much cash I had on hand."

The account also has charges of cash paid to third parties for Bartlett. On this point witness stated that Mr. Bartlett "would come into the office and say give me so much cash and charge it to me by A. or for C.," Bartlett's employees. The credibility of this testimony and the weight of the evidence was a matter for the determination of the auditor and the chancellor, who gave full hearing to the auditor's report. We cannot say that the findings of fact by the auditor and by the chancellor are manifestly wrong.

There was no error in allowing Mr. Rule to introduce his books of account to prove the items of cash advanced as well as items for goods sold and delivered. On this question it must be conceded the authorities are in conflict. The cases *pro* and *con* are indicated by Mr. Wig-

more, pars. 1539 and 1549; Elliott on Evidence. par. 467. We live in an agricultural state, where merchants and the owners of commissaries do an extensive supply business and by custom and in the general course of this business are freely called upon to advance cash to tenants, croppers, and other employees. The business of the country is largely done on credit. In probating against the estate of decedents long accounts involving numerous transactions, the creditor is an incompetent witness in his own behalf, and by necessity must rely largely upon books of account. The reasoning, then, of Judge LUMPKIN in *Ganahl* v. *Shore,* 24 Ga. 24, appeals to us. It is there held that cash entries can be proven by the books the same as entries for goods sold and in making proof the same principle is applicable to cash entries as to other entries made in the usual course of the business. The court in this case observes:

"Whatever doctrine may have obtained formerly upon this subject, the world is too much in a whirl, there is too much to be done in the twenty-four hours now to allow of the particularity and consequent delay in the obtainment of receipts, etc. . . . . He that so affirms is a half century behind the age in which he lives."

In *Wilson* v. *Wilson,* 6 N. J. Law, 99, it is said by KIRK PATRICK, C. J.;

"Upon principle I can see no reason why a book should be lawful evidence of one item, and not of another; why it should be evidence of goods sold and delivered, and not of money paid or advanced. Why should there be witnesses called, or receipts taken, in the one case more than in the other? If necessity be pleaded for the one, may it not for the other also? For they are both transactions in the common course of business, equally necessary, and, I should think, equally frequent, or nearly so."

This is the view taken and the doctrine approved by the Wyoming supreme court in *Lewis* v. *England,* 14 Wyo. 128, 82 Pac. 869, 2 L. R. A. (N. S.) 401, where the court, by Van Orsdel, J., observes:

"We think the great weight of modern authority is to the effect that, where cash entries appear in the general course of accounts, as a part of the regular course of business transacted, such entries should be admitted as competent evidence."

The facts in the case of *Lewis* v. *England* are somewhat similar to the facts of the present case. Perhaps the proper limitation is indicated by the statement of Mr. Wigmore as follows:

"The better opinion is that, while as a general rule such entries are not to be regarded as admissible, yet in particular cases the ordinary course of business may involve cash entries and they may then be used." Paragraph 1549.

Of course, the entries must be made "in the usual course of business, at or about the time the facts entered transpired," and the entries should be "original and made by a party having knowledge of the facts entered," etc. *Chicago R. R. Co.* v. *Provine,* 61 Miss. 288. The principles governing the admissibility of books were correctly stated by our own court in 1866 in the case of *Moody* v. *Roberts et al.,* 41 Miss. 74. As stated by the court in that case:

The books "will not be evidence of any charge not within the regular course of the business of the party, nor of any fact that may arise collaterally in the case."

The record of the present case gives evidence of a custom whereby the deceased obtained from time to time small items of cash from Mr. Rule; that he had these items charged to his account in the same way that goods would be obtained and charged; that the bookkeeper of Mr. Rule would make out a statement of the

account at the end of every month and submit it to the deceased for his information and approval; and that the deceased did in fact receive a statement of his account every month, and made no objections to any items now appearing thereon. The integrity of the books and the correctness of the itemized account are vouched for by Mr. Burke, the bookkeeper, and his assistant, the wife of Mr. Burke. The testimony does not indicate any irregularity in the method of keeping the books or any suspicion of improper dealing appearing on the face of the books. In addition to the probative value of the books themselves, the bookkeeper had personal recollection of many of the items, and was quite positive about the correctness of all cash entries. Upon the whole record, after consideration of all objections urged against the claim of appellee, we see no cause to disturb the decree appealed from.

*Affirmed.*