**UNITED STATES of America, Plaintiff,**

v.

**James R. BRYANT and Janis B. Bryant, Defendants.**

**No. DC85–49–NB–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

Feb. 18, 1986.

Robert P. Crutcher, Oxford, Miss., for plaintiff.

John W. Whitten, Jr., Sumner, Miss., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause came before the court on the motion of the defendants (the Bryants) for summary judgment and the cross-motion of the plaintiff (the USA) for summary judgment. Being fully advised in the premises, the court is now in a position to rule on these motions.

This cause involves liability on a promissory note evidencing a loan to the defendants from the Farmers Home Administration (FHA) in the principal amount of $19,-870.00. The defendants personally signed this note as co-obligors with Larry and Jimmy Cook and B & C Farms, Inc. Although the Bryants and the Cooks were sole shareholders in B & C Farms, Inc. at the time of the loan, the Bryants later sold their stock to the Cooks and have no present interest in B & C Farms, Inc. The note in issue, as well as three subsequent notes upon which the Cooks and B & C Farms, Inc. were obligated, were placed in default by the FHA in early 1982. Thereafter, certain farm equipment pledged as security on the $19,870.00 note was sold by public auction. An outstanding balance remains on the note after application of the sale proceeds; thus, the USA seeks a deficiency judgment on behalf of the FHA against the Bryants. The Bryants allege that they were not given proper notice of the sale and that this failure bars or offsets any deficiency. Furthermore, the Bryants contend that several payments by the Cooks and/or B & C Farms, Inc. should be applied to the oldest note, i.e., the $19,-870.00 note in issue, rather than to subsequent notes, and that such application extinguishes the outstanding balance on the

note. Thus, the Bryants assert that they are not liable for a deficiency as a matter of law. The USA, in its cross-motion for summary judgment, contends that the Bryants are liable for the full deficiency.

### 1. Necessity of Notice

■ The Bryants allege that they had no notice or knowledge of default in payment of the note, of repossession of the collateral, or of the sale until more than four months after the public auction. The USA admits that the Bryants were not given notice of the sale, but contend that notice was unnecessary in the present case.

Miss.Code Ann. § 75–9–504(3) (1972) requires that a secured party give notice to a debtor of a sale of collateral, with certain exceptions not applicable herein. Miss. Code Ann. § 75–9–105(d) (1972) defines "debtor" as including one "who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral...." *Id.* Thus, the subsequent sale of stock by the Bryants, and their resulting lack of ownership in the collateral, does not affect their right to notice under Miss.Code Ann. § 75–9–504(3). Furthermore, the court finds that the context of Miss.Code Ann. § 75–9–504(3) requires that "debtor" be construed to include, at a minimum, all obligors. *See* Miss.Code Ann. § 75–9–105(d) (construction of "debtor" to include both owner and obligor where statutory context requires). Accordingly, the Bryants were entitled to notice of the sale.

### 2. Effect of Lack of Notice

Inasmuch as the Bryants were not given the notice of sale to which they were entitled, the court must determine the effect of this omission.

The Uniform Commercial Code, which has been adopted in Mississippi, does not specifically address the effect of a creditor's failure to comply with the notice provisions of Miss.Code Ann. § 75–9–504(3). Furthermore, this question has not been specifically considered by the courts of the State of Mississippi. However, this court is aided by *Walker v. V.M. Box Motor Co.,* 325 So.2d 905 (Miss.1976), construed with

opinions of other courts which have addressed this issue.

Case law reveals two conflicting doctrines regarding the failure of a secured party to give notice. *See generally* Annot., 59 A.L.R.3d 401 (1974). One line holds that a secured party may not recover a deficiency judgment when notice provisions are not followed. *See, e.g., Skeels v. Universal Credit Corp.,* 222 F.Supp. 696, 702 (W.D. Pa.1963), *vacated on other grounds,* 335 F.2d 846 (3rd Cir.1964); *Turk v. St. Petersburg Bank & Trust Co.,* 281 So.2d 534, 536 (Fla.Dist.Ct.App.1973). A conflicting view holds that non-compliance with notice requirements does not bar a deficiency judgment but creates at most a rebuttable presumption that the value of the collateral equals the value of the debt; accordingly, the secured party bears the burden of proving that the fair market value of the goods sold was less than this amount. *See, e.g., United States v. Whitehouse Plastics,* 501 F.2d 692, 695 (5th Cir.1974); *Leasing Associates v. Slaughter & Son, Inc.,* 450 F.2d 174, 177 (8th Cir.1971). *Cf. United States v. Whitehouse Plastics,* 501 F.2d at 695 (compliance encouraged under either doctrine).

■ Although Mississippi case law does not address the effect of failure to given notice in all cases, lack of notice undoubtedly does not bar a deficiency judgment when, as in the present case, the security agreement provides that the obligor shall be liable for any deficiency after application of the proceeds of the sale. *Walker v. V.M. Box Motor Co.,* 325 So.2d at 906. However, failure to give the required statutory notice shifts the burden to the creditor to establish that the sale conformed with "reasonable commercial practices." In meeting this burden, the creditor may not rely upon the statutory presumption that certain sales are deemed "commercially reasonable," *see* Miss.Code Ann. § 75–9–507(2) (1972), since the creditor's failure to give the required notice renders this presumption inapplicable. Furthermore, the creditor must also assume the

burden of proving that the sum received for the property represents its fair market value. 325 So.2d at 906. In the present case, evidence conflicts both as to whether the sale was in accordance with "reasonable commercial practices," and as to whether the amount received at auction was the fair market value. Accordingly, summary judgment is not appropriate on this issue.

### 3. Application of Payments

Finally, the defendants argue that certain payments by the Cooks and B & C Farms, Inc. to the FHA were improperly applied to subsequent notes taken out by the Cooks and B & C Farms, Inc., rather than to the oldest note upon which the Bryants were liable. The defendants argue that application of these payments to the oldest note, *i.e.*, the note in issue, extinguishes their liability.

Under Mississippi law, payments first made should be applied to debits first incurred, in the absence of evidence to the contrary. *See, e.g., National Surety Corp. v. Jackson Ready-Mix Concrete,* 222 So.2d 119, 125 (Miss.1969); *Anderson v. Laurel Oil & Fertilizer Co.,* 228 Miss. 95, 100, 87 So.2d 556, 557 (1956). Exceptions to this rule include that a payee must apply a payment to the debt to which the payor directs, *see, e.g., J.R. Watkins Co. v. Buchanan,* 149 Miss. 483, 487–89, 115 So. 773, 773–74 (1928); *M.G. Travis & Co. v. Mosley,* 148 Miss. 368, 374, 114 So. 628, 630 (1927), and that payments derived from a particular source or fund must be applied to the relief of that source or fund unless the parties otherwise agree, *see McElwrath & Rogers v. Kimmons & Sons,* 146 Miss. 775, 792–94, 112 So. 680, 680–81 (1927).

 In the present case, the promissory note signed by the Bryants, as well as by the Cooks and B & C Farms, Inc., provides that the note is "subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof." The Bryants therefore consented that payments would be governed by FHA regulations, and the parties agree that the payments were correctly applied under such regulations. Coincidentally, the FHA regulations appear to cause at least some of the payments in issue to be applied as they would under Mississippi law. Accordingly, the court determines that subsequent payments by the Cooks and/or B & C Farms, Inc. were properly applied under the controlling FHA regulations, and that a balance remains on the $19,870.00 note in issue.

### Conclusion

Genuine issues of material fact exist regarding whether the public auction was in accordance with "reasonable commercial practices" and whether the amount received was the fair market value of the property. Accordingly, both the motion of the defendants for summary judgment and the cross-motion of the plaintiff for summary judgment are not well taken and shall be denied. The plaintiff shall bear the burden of proof on both these issues.

Let an order issue accordingly.